## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GROMA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| BUILDRE, LLC, GROMA GPS | )   Civil Action No. 22-CV-11708-AK |
| SOFTWARE AND MACHINERY | ) |
| AUTOMATION SYSTEM, and | ) |
| GROMA GPS YAZILIM VE MAKİNE | ) |
| OTOMASYON SİSTEMLERİ ANONİM | ) |
| ŞİRKETİ a/k/a GROMA GPS & | ) |
| MACHINE AUTOMATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**A. KELLEY, D.J.**

Plaintiff Groma, LLC ("Groma-Massachusetts"), brings this action against Defendants BuildRE, LLC ("BuildRE"), Groma GPS Software and Machinery Automation System ("Groma GPS-Texas"), and Groma GPS Yazilim Ve Makine Otomasyon Sistemleri Anonim Şirketi ("Groma GPS-Turkey") for trademark and service mark infringement under the Lanham Act and at common law.  [Dkt. 1 ("Compl.") at ¶ 1].  Plaintiff has filed a motion for a preliminary injunction [Dkt. 13], which Defendants oppose [Dkt. 34].  Defendants have filed a joint motion to dismiss for lack of personal jurisdiction [Dkt. 25], which Plaintiff opposes [Dkt. 38].  For the following reasons, Defendants' joint motion to dismiss [Dkt. 25] is **GRANTED**, and Plaintiff's motion for a preliminary injunction [Dkt. 13] is **DENIED AS MOOT**.

## I.      BACKGROUND

The Court draws the facts from the complaint and undisputed evidentiary proffers submitted by both parties in support of their jurisdictional arguments.  Plaintiff Groma-Massachusetts is a Massachusetts-based company with a place of business in Boston, Massachusetts.  [Compl. at ¶ 5].  Groma-Massachusetts is a real estate and technology firm which provides real estate investment, development, and management services, as well as technology to tenants, developers, investors, property managers, and communities.  [Id. at ¶ 12].  Groma-Massachusetts is the owner of U.S. Trademark Registration No. 6,244,525 for "GROMA" within Class 36 and Class 37, which encompass trademark uses in various real estate fields.  [Id. at ¶ 33].

Defendant BuildRE is a Texas-based company with a place of business in Frisco, Texas.  [Id. at ¶ 6; Dkt. 28 at ¶ 4].  Defendant Groma GPS-Texas is a Texas-based corporation located at the same address in Frisco, Texas, as BuildRE.  [Compl. at ¶ 7; Dkt. 30 at ¶ 4].  Defendant Groma GPS-Turkey is a Turkey-based corporation with a place of business in Gebze, Kocaeli, Turkey.  [Compl. at ¶ 8; Dkt. 29 at ¶¶ 4-5].  Patrick Joseph Morgan is chief executive officer of each of the Defendant-corporations.  [Compl. at ¶ 9; Dkt. 28 at ¶ 2; Dkt. 29 at ¶ 2; Dkt. 30 at ¶ 2].  Groma GPS-Texas and Groma GPS-Turkey are wholly owned subsidiaries of BuildRE.  [Compl. at ¶ 10].  All three companies are technology companies.  [Id. at ¶¶ 37, 48, 67].  Groma GPS-Turkey designs and creates GPS and vehicle automation software and hardware using artificial intelligence ("AI"), such as software to operate machines that drive piles into soil to build solar panels using AI and GPS technology.  [Dkt. 29 at ¶¶ 5-6].  BuildRE distributes products related to pile drivers for photovoltaic solar projects.  [Dkt. 28 at ¶ 12].  BuildRE distributes software products designed by Groma GPS-Turkey among other products for other

companies.  [Id. at ¶ 13].  To put it simply, BuildRE is a parent company that distributes the software products of its subsidiary, Groma GPS-Turkey.  Groma GPS-Texas has not yet conducted any business and does not have any customers, sales, revenue, or a website.  [Dkt. 30 at ¶ 6].

Plaintiff does not dispute the following facts asserted by Defendants.  First, none of the Defendants is listed with the Massachusetts Secretary of the Commonwealth, nor do they pay any taxes in Massachusetts.  [Dkt. 28 at ¶¶ 5, 18; Dkt. 29 at ¶¶ 9, 20; Dkt. 30 at ¶¶ 5, 15].  Second, none of the Defendants has a physical presence in Massachusetts, such as offices, manufacturing, or distribution facilities, nor do they have any employees in Massachusetts.  [Dkt. 28 at ¶¶ 6-7, 10-11; Dkt. 29 at ¶¶ 10-11, 16-17; Dkt. 30 at ¶¶ 7-8, 11-12].  Third, none of the Defendants has any customers in Massachusetts, nor do they derive any income from operations in Massachusetts, and there are no records of any sales or shipments to Massachusetts from any of the Defendants.  [Dkt. 28 at ¶¶ 15, 17, 19; Dkt. 29 at ¶¶ 18-19, 21; Dkt. 30 at ¶¶ 13-14, 16].

Groma-Massachusetts filed the complaint in this action seeking damages and a preliminary and permanent injunction.  [Compl. at ¶ 1].  Groma-Massachusetts filed a motion for a preliminary injunction shortly thereafter.  [Dkt. 13].  Defendants then jointly moved to dismiss for lack of personal jurisdiction.  [Dkt. 25].  The Court stayed consideration of Plaintiff's request for a preliminary injunction until it could resolve the Defendants' motion to dismiss for lack of personal jurisdiction.  [See Dkt. 33].

## II.    LEGAL STANDARD

When "confronted with a motion to dismiss for want of in personam jurisdiction," the plaintiff bears the burden of proving that the court may exercise personal jurisdiction over the

defendant.  Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022) (citations omitted); see A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) ("[The plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists.").  When a motion to dismiss for lack of personal jurisdiction "is made at the inception of the case and the issue of jurisdiction is not intertwined with the merits, the prima facie approach controls." Motus, 23 F.4th at 121.  Under this standard, the court should "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

The court may consider "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record," including a defendant's offerings.  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  While a plaintiff's "unsupported allegations in [its] pleadings" are not sufficient, Boit, 967 F.2d at 680, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true . . . irrespective of whether the defendant disputes them" for the purposes of the motion, Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (internal citation and quotation marks omitted).  The court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim. Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998).  While a defendant may also offer evidence, the defendant's evidentiary proffers only "become part of the mix . . . to the extent that they are uncontradicted."  Adelson, 510 F.3d at 48 (citing Mass. Sch. of Law, 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").  Facts asserted in a defendant's affidavits are not deemed disputed

"merely because [the party opposing the dismissal], in an unsworn brief or in argument before a court, challenges them." Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 56 (1st Cir. 2020).

## III.    DISCUSSION

For a court to exercise personal jurisdiction over a defendant, the court must find "sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth [or Fifth] Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Defendants do not dispute the application of Massachusetts' long-arm statute and instead rest their challenge to personal jurisdiction on constitutional grounds. Therefore, the focus of the Court's inquiry is whether the exercise of personal jurisdiction over Defendants here would be consistent with due process.[1]

Due process requires that a defendant have "minimum contacts" in the forum "such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Supreme Court has recognized two categories of personal jurisdiction under the Constitution: general and specific. General jurisdiction allows a court to exercise personal jurisdiction over a defendant in that forum irrespective of the forum's relation to the cause of action. General jurisdiction reaches "causes of action arising from dealings entirely distinct from" a defendant's in-state contacts, id. at 318, only when the defendant is "essentially at home" in the forum state, Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct., 141 S. Ct. 1017, 1024 (2021). Specific jurisdiction "allows a

---

[1] Even if Defendants did challenge the application of Massachusetts' long-arm statute, the "jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause," and courts often "move directly to the constitutional analysis" where "the modest difference between these requirements is not material." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016); see Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998) ("Because we determine that the assertion of personal jurisdiction over Lintas:Paris and RJR France would offend due process, we decline to decide the difficult question whether plaintiffs have established a *prima facie* case authorizing personal jurisdiction over these defendants under the Massachusetts long-arm statute.").

court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'" Baskin-Robbins, 825 F.3d at 35 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).  Plaintiff here advances personal jurisdiction arguments only with respect to specific jurisdiction.  The Court limits its analysis accordingly.

In order for a court to exercise specific jurisdiction over a defendant, (1) the claim must "relate[] to or arise[] out of defendant's contacts with the forum"; (2) the contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) the exercise of jurisdiction must be reasonable.  Phillips Exeter Acad., 196 F.3d at 288. "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction."  Scottsdale Capital Advisors Corp. v. Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). Where cases, such as this one, involve virtual contact "operated from outside the forum state that residents in that state can access, the focus of this analysis has typically been on the purposeful availment requirement."  Kuan Cheng v. U.S. Sports Acad., Inc., No. CV 18-12533-FDS, 2019 WL 1207863, at *6 (D. Mass. Mar. 14, 2019), aff'd sub nom. Chen, 956 F.3d 45.

In assessing whether a defendant has "purpose[ly] avail[ed] [itself] of the privilege of conducting business in the forum," courts look to "the voluntariness of the contacts [with the forum] and the foreseeability of being haled into court based on those contacts."  Motus, 23 F.4th at 124.  Purposeful availment requirements can be met by showing a defendant's "specific targeting of a forum's residents" to demonstrate voluntariness and a defendant's "regular course of sale in the forum" to establish foreseeability.  Id. (citations omitted).  The mere fact that the suit arises out of trademark infringement, which is likely to cause harm in the jurisdiction where the trademark holder resides, does not on its own rise to purposeful availment without the

defendant's prior knowledge of the location of the trademark holder.  See A Corp., 812 F.3d at 60-61; Motus, 23 F.4th at 124-26.  Moreover, the defendant's conduct with the forum must "result proximately from its own actions" rather than "the unilateral activities of third parties" for a court to find purposeful availment.  Motus, 23 F.4th at 124 (citations omitted).  The purposeful availment requirement "assure[s] that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  A Corp., 812 F.3d at 60-61 (quoting Sawtelle, 70 F.3d at 1391).

Groma-Massachusetts provides several potential jurisdictional hooks to argue in favor of purposeful availment.  First, Plaintiff asks the Court to impute the actions of non-parties Aura, Rent4Solar, and Stereos to Defendants when assessing Defendants' contacts with Massachusetts.  [Dkt. 38 at 14].  Second, Plaintiff points to Defendants' online presence, specifically, their websites.  [Id. at 15-17].  Third, Plaintiff highlights Defendant BuildRE's advertisement in a nationally distributed energy industry magazine.  [Id. at 18].  Fourth, Plaintiff relies on Defendants' membership in two industry organizations and attendance at a conference hosted by those organizations.  [Id.].  Because each Defendant presents similar circumstances in terms of its connections to the forum state, the Court treats the examination of whether the Court may exercise personal jurisdiction over the Defendants as a joint analysis except where otherwise noted.

### A.  Aura, Rent4Solar, and Stereos

In an affidavit in support of its opposition to the motion to dismiss, Groma-Massachusetts' attorney asserts that non-parties Aura, Rent4Solar, and Stereos and Defendants BuildRE, Groma GPS-Texas, and Groma GPS-Turkey "operate as a unitary business enterprise for a shared purpose, and all of these companies are organized, under the control of, and directed

by a common group of individuals, Patrick Morgan, Barbara Molina, Manuel Molina, and Angela Durbin."[2]  [Dkt. 39 ("Pl.'s Aff.") at ¶ 15].  As evidence for this conclusion, the affidavit references an exhibit that includes images of the websites of BuildRE, Groma GPS-Turkey, Aura, and Stereos, where Patrick Morgan, Barbara Molina, Manuel Molina, and Angela Durbin, or some combination thereof, are listed in various roles, including founder, at all four organizations.  [Id.; see Dkt. 39-11].  The photographs used for the individuals are identical on all four websites, and the biographies of the team members on BuildRE's website are, in places, identical to those on Aura's website.  [See Dkt. 39-11].  The affidavit also states that Defendants and Aura, Rent4Solar, and Stereos identify each other as partners or distributors on their websites.  [Pl's Aff. at ¶ 4].

The affidavit then describes a variety of jurisdictional hooks to tie non-parties Aura and Rent4Solar to Massachusetts, such as press releases describing a deal between Aura and NFS Leasing, a Massachusetts-based company; interactive forms and online webstores on Aura and Rent4Solar's websites; and portions of Rent4Solar's website and social media advertising that they provide "nationwide service."  [Id. at ¶¶ 22-25].  The affidavit also describes other connections between Rent4Solar and Defendants, such as the fact that Rent4Solar's webstore includes Groma GPS-Turkey products; that Rent4Solar's webstore tab labeled "Buy" redirects to

---

[2] Defendants filed a joint motion to strike portions of Plaintiff's affidavit.  [Dkt. 43].  The Court granted that motion to the extent the affidavit asserts legal conclusions, such as the one here—that Defendants and Aura, Rent4Solar, and Stereos "operate as a unitary business enterprise for a shared purpose."  [Dkt. 52; see Pl.'s Aff. at ¶ 15]. However, the Court may still consider the factual statements contained within such paragraphs, such as the references to the individuals leading the companies.

the BuildRE website; and that Rent4Solar's website has a banner directing customers looking to buy instead of rent to buy from BuildRE.  [Id. at ¶¶ 25-26].

Groma-Massachusetts argues that the actions of Defendants' "business enterprise," including Aura, Rent4Solar, and Stereos, "can be imputed to the defendants and can be relied upon independently to show purposeful availment."  [Dkt. 38 at 14].  In analyzing when the acts of a subsidiary may be imputed to a parent company, the First Circuit has explained that there must be a "'plus' factor—something beyond the [entity's] mere presence within the bosom of the corporate family"—to establish that the "activity of one separate yet related corporate entity has conferred jurisdiction on another."  Multi Tech. Indus., LLC v. Huhtamaki Forchheim, No. 05-CV-403-SM, 2007 WL 433368, at *2 (D.N.H. Feb. 7, 2007) (citing Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990)).  Though the Court is not asked to impute the actions of subsidiaries to a parent company here, and Plaintiff instead focuses generally on a "business enterprise," similar logic may apply.  The "First Circuit has determined that due process is satisfied where the defendant in question exercises 'substantial influence' or 'control' over another party's 'decision to carry on the in-forum activities which constitute the relevant "minimum contacts.""'  Duggan v. Martorello, 596 F. Supp. 3d 158, 177 (D. Mass. 2022) (citing Donatelli, 893 F.2d at 469).

Plaintiff has not established such "substantial influence" or "control" here, particularly with respect to the non-parties' activities in Massachusetts.  See Donatelli, 893 F.2d at 465 (noting that there is a "presumption of corporate separateness that [may] be overcome by clear evidence").  The facts that the same individuals may lead the non-parties and the Defendants and that they include one another among a list of many "partners" or "distributors" on their websites are insufficient to confer specific jurisdiction over Defendants based on the actions of Aura,

Rent4Solar, and Stereos in Massachusetts, assuming the latter's conduct establishes minimum contacts in the first place.  See Tassinari v. Salvation Army Nat'l Corp., 610 F. Supp. 3d 343 356 (D. Mass. 2022) ("In sum, the evidence of overlapping leadership and common policies does not satisfy the jurisdictional standard without more evidence of overwhelming control.").  Groma-Massachusetts has similarly failed to offer proof that Defendants were involved in—let alone controlled or substantially influenced—Aura's deal with NFS Leasing, whom Plaintiff claims is a Massachusetts company.

Groma-Massachusetts relies on Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42 (1st Cir. 2002), to support its request to attribute the contacts of Aura, Rent4Solar, and Stereos to Defendants.  While "the actions of an agent may be attributed to the principal" for the "purposes of personal jurisdiction," there must be a "sufficient relationship" to "permit the exercise of jurisdiction."  Id. at 55-56.  Two defendants in Daynard had conceded personal jurisdiction based on their forum state contacts, but two other defendants challenged personal jurisdiction.  Id. at 45.  The plaintiff there alleged that the defendants were "in a joint venture, or at least held themselves out to be in a type of agency relationship."  Id.  The Daynard court found that the defendants challenging personal jurisdiction had "held themselves out to be in some form of an agency relationship with" the defendants who had conceded jurisdiction.  Id.  The court also found that the defendants challenging personal jurisdiction had "ratified" the other defendants' "in-forum activities giving rise to [the] lawsuit" by "accepting and encouraging [the plaintiff's] services, and agreeing to compensate him."  Id. at 45, 59-60.

The unique circumstances in Daynard that allowed the court to impute the actions of the defendants who had conceded jurisdiction to the defendants who challenged jurisdiction are not present here.  First, unlike here, the plaintiff in Daynard asked the court to impute the contacts of

defendants in the case to *other defendants* in the case whom the plaintiff alleged were joint venturers in the conduct at issue in the litigation.  See id. at 44-45.  Groma-Massachusetts asks the Court to impute the actions of non-parties who are not alleged to have any role in the conduct at issue in the suit.  Second, unlike in Daynard, it is not clear here that Defendants or the non-parties "ever represented that they acted with the authority of the other."  Ward v. Auerbach, Civil Action No. 16-12543-FDS, 2017 WL 2724938, at *11 (D. Mass. June 23, 2017) (distinguishing Daynard).  Third, here, unlike in Daynard, there is no allegation that the Defendants "initially authorized, or later ratified" the non-parties' forum state contacts that Groma-Massachusetts asks the Court to impute to Defendants.  See Daynard, 290 F.3d. at 55-60.

Groma-Massachusetts has not presented sufficient facts to allow the Court to impute the forum state activities of non-parties Aura, Rent4Solar, and Stereos to the Defendants.  As third parties, their forum-state conduct is not relevant to the Court's jurisdictional analysis and does not allow the Court to exercise personal jurisdiction over Defendants here.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 417 (1984) ("[T]he unilateral activit[ies] of another party or a third person [are] not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

### B.  Online Presence

Groma-Massachusetts also asserts that the establishment and formatting of websites by Groma GPS-Turkey and BuildRE constitute purposeful availment because "the websites . . . had foreseeable and actual consequences in Massachusetts."  [Dkt. 38 at 15].  Neither website has interactive features, allows online purchases, nor provides pricing information for its products, and neither business has initiated any contact with or responded to any Massachusetts resident through their respective websites.  [Dkt. 28 at ¶¶ 21-22; Dkt. 29 at ¶¶ 22, 24].  BuildRE's

website has a "Contact Us' tab which provides contact information, including a phone number, a

physical address in Hockley, Texas, an email address, and a WhatsApp contact number, to

viewers.  [Dkt. 39-12 at 2].  The website also features an option to "Get In Touch," which

includes a fillable form for users to submit their names, emails, phone numbers, company names,

and a message.  [Id.].  Groma-GPS Turkey has a similar webpage which lists a physical address

in Turkey and an email address and has a fillable "Contact Form" otherwise identical to the one

on BuildRE's website.  [Id. at 3].[3]

This evidence is not sufficient to show purposeful availment.  "The mere availability of a

primarily informational website is not enough—by itself—to render a defendant susceptible to

jurisdiction in a particular forum."  Motus, 23 F.4th at 125.  Websites are, by nature, universal

and can generally be accessed no matter the jurisdiction, but that does not mean that an entity, by

creating a website, is thereby purposely availing itself of the benefits and protections of any

jurisdiction with an internet connection.  See id.  There "must be more" to establish specific

jurisdiction, as "'the universality of websites in the modern world would overwhelm

constitutional limitations' and render website operators amenable to suit anywhere within the

vast reach of the internet."  Id. (quoting Chen, 956 F.3d at 60).  When evaluating specific

jurisdiction, courts have looked for evidence that the website engaged in "specific targeting of

forum residents and evidence that the website has generated 'substantial revenue from forum

residents.'"  Id. (quoting Chen, 956 F.3d at 60).  Plaintiff here provides no proof that Defendants

have done either of these things, and Defendants refute that they have.  [Dkt. 28 at ¶¶ 21-22; Dkt.

---

[3] Groma-Massachusetts also presents for consideration the websites of non-parties Aura, Rent4Solar, and Stereos,
but, as stated earlier, "the unilateral activit[ies] of another party or a third person [are] not an appropriate
consideration when determining whether a defendant has sufficient contacts with a forum State to justify an
assertion of jurisdiction."  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 417 (1984).  As such,
consideration of the websites of the non-parties is not appropriate.  Even if it were, Plaintiff has failed to show that
Aura, Rent4Solar, and Stereos could be subject to specific jurisdiction in Massachusetts based on their websites.

29 at ¶¶ 22, 24; see Dkt. 39-1; Dkt. 39-2; Dkt. 39-11; Dkt. 39-12; Dkt. 39-22].  Defendants'
websites "never mention[] Massachusetts" and "afford[] no [direct] mechanism for
Massachusetts residents to order any goods or services" from Groma GPS-Turkey or BuildRE.
A Corp, 812 F.3d at 60.  Providing a means for customers, some of whom may live in
Massachusetts, to reach out to Defendants, without evidence of whether any forum resident
actually initiated contact through the website, is not enough to "constitute purposeful availment
with respect to Massachusetts."  Motus, 23 F.4th at 125 (noting that without such evidence, the
plaintiff "left the district court to guess whether [the defendant] has any Massachusetts
customers, receives any revenue from Massachusetts, or has any other business connection with
Massachusetts").  Here, Groma GPS-Turkey and BuildRE's websites "function[] more like a
digital billboard, passively advertising the business" and offering only a means to contact the
website proprietor.  A Corp., 812 F.3d at 60.  That is not enough to show purposeful availment.[4]

### C.  Advertisement in North American Clean Energy Magazine

Groma-Massachusetts argues that BuildRE purposely availed itself of doing business in
Massachusetts by purchasing advertising space in the March/April 2022 issue of North American
Clean Energy magazine.  [Dkt. 38 at 7; see Pl.'s Aff. at ¶ 20; Dkt. 39-13].  The magazine has a
digital subscription base of over 50,000 subscribers and is directly mailed to 30,000 subscribers.
[Pl.'s Aff. at ¶ 21].  Groma-Massachusetts asserts that based on the size of distribution, it is
reasonable to believe that some of these 30,000 mailed magazines went to entities and physical
locations in Massachusetts.  [Dkt. 38 at 7].  Groma-Massachusetts argues that this supposed
offline contact with Massachusetts, when combined with Defendants' contact with the forum

---

[4] Groma-Massachusetts encourages the Court to evaluate the websites as evidence of purposeful availment using the
sliding scale created in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997).  The
First Circuit has declined to adopt this analysis, and this Court will not do so here.  Chen v. U.S. Sports Acad., Inc.,
956 F.3d 45, 55 n.3 (1st Cir. 2020).

through their websites, constitutes purposeful availment.  [Id. at 18].  Besides the speculation that would be required to deduce how many, if any, copies of this magazine made their way to Massachusetts, it is not clear that this sort of nationally broadcast advertisement is enough to show purposeful availment.

In Noonan v. Winston Co., 135 F.3d 85, 91 (1st Cir. 1998), the First Circuit rejected the plaintiff's argument that a defendant's intent to reach the forum state could be inferred from the placement of advertisements in publications with international circulations.  Two of the foreign defendants in Noonan had used the plaintiff's image for a "full-page advertisement" in French magazines and, without the defendants' knowledge, "at least 305 copies of various French magazines containing the advertisements were distributed to, and at least 183 of these were sold from, retail magazine outlets in the Boston area."  Id. at 88.  Those two defendants challenged personal jurisdiction.  The Noonan court contrasted the plaintiff's jurisdictional claim, which "rest[ed] on an advertisement which appeared in 305 individual magazines, circulated in Massachusetts" by a French company—a "small distribution"—with the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984), where the forum of California was the "focal point of both the effect and the story" of a "libelous story [that] was generated from California sources, concerned a California celebrity, and appeared in a newspaper with a forum circulation of 600,000 copies."  Noonan, 135 F.3d at 91; see Calder, 465 U.S. at 789.  In determining that the plaintiff's "Massachusetts-based injury [was] not enough to support jurisdiction over the defendants," the Noonan court explained that to "find otherwise would inappropriately credit random, isolated, or fortuitous contacts and negate the reason for the purposeful availment requirement."  Noonan, 135 F.3d at 92.  Just as in Noonan, here, Groma-Massachusetts has not

proffered any facts to suggest Massachusetts was the "focal point" of circulation for the magazine in which BuildRE's advertisement was published.  Id. at 91.

The size and consistency of the advertisement in the magazine here also suggest that any contact with Massachusetts was not voluntary or foreseeable.  "The size of a distribution of offending material helps determine whether a defendant acted intentionally."  Id.  That is, "[j]ust as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact."  Id.; see also Dalmau Rodriguez v. Hughes Aircraft Co., 781 F.2d 9, 15 (1st Cir. 1986) (finding that "the single advertisement" of the defendant's product in a magazine the plaintiff received in the forum was "not the type of transaction that could reasonably lead a manufacturer to believe would be the basis for haling him into" the forum).  Here, BuildRE placed an advertisement *once* in a magazine distributed *nationally*.  Moreover, Groma-Massachusetts asks the Court to speculate that the number of magazine copies—of 30,000—that were sent to Massachusetts residents was so significant that it supports the conclusion that Defendants purposefully availed itself of "the privilege of conducting activities" in Massachusetts.  See Motus, 23 F.4th at 122.  Plaintiff reaches too far.  Even drawing the favorable inference that some substantial portion of these 30,000 copies made their way to Massachusetts, the one-off nature of the advertisement, its modest size in the context of a full magazine, and its national distribution dilute the contact to such a de minimus degree that purposeful availment cannot be reasonably inferred.

### D.  Involvement with SEIA, SEPA, and RE+

As a final jurisdictional hook, Groma-Massachusetts points to the actions of three organizations that at least some of the Defendants have been involved with to establish contacts in Massachusetts.  [Dkt. 38 at 18].  Plaintiff's affidavit states that BuildRE and non-party Aura

are members of Solar Energy Industries Associate ("SEIA") and Smart Electric Power Alliance ("SEPA").  [Pl.'s Aff. at ¶ 27].  The affidavit states that SEIA lists more than forty Massachusetts-based members in its directory, published press releases and articles describing Massachusetts-based activities, and has Massachusetts-specific webpages targeting Massachusetts entities.  [Id. at ¶ 28].  Similarly, SEPA publishes, among other things, Massachusetts-based content and lists Massachusetts-based entities as members.  [Id. at ¶ 29]. The affidavit also claims that RE+, a series of trade events produced and promoted by SEIA and SEPA, holds an annual conference, RE+ Northeast, in Boston, Massachusetts, with Massachusetts-based attendees.  [Id. at ¶¶ 32-33].  Plaintiff states that BuildRE and Groma GPS attended RE+ conferences in California.  [Id. at ¶ 30].  Although BuildRE does not dispute that it attended RE+'s conference in Anaheim, California, it asserts that it has not attended any trade show in Massachusetts, and Groma-Massachusetts has not provided evidence to the contrary. [Dkt. 28 at ¶ 20].

The Court has already explained why the actions of non-parties Aura, Rent4Solar, and Stereos are irrelevant to its jurisdictional inquiry.  Similar logic applies to its analysis of SEIA, SEPA, and RE+'s contacts with Massachusetts.  As this Court has already noted, "the unilateral activit[ies] of another party or a third person [are] not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  Helicopteros Nacionales, 466 U.S. at 417.  In fact, being haled into a foreign jurisdiction through the unilateral acts of another is exactly what the purposeful availment requirement is meant to prevent.  See Burger King, 471 U.S. at 475 ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or third person." (internal citations and quotation

omitted)).  There is no allegation that any of the Defendants encouraged or were any way involved in the actions of SEIA, SEPA, or RE+ to the extent that their conduct could establish contacts in Massachusetts.  Mere membership in an organization also involved with Massachusetts-based entities cannot justify personal jurisdiction here.

## IV.  CONCLUSION

Groma-Massachusetts has failed to meet its burden to establish that personal jurisdiction exists over Defendants, even when viewing the pleadings and evidentiary proffers as a whole and in a light favorable to the Plaintiff.  Because the Court finds that Groma-Massachusetts has failed to show that Defendants have purposefully availed themselves of conducting business in the forum state of Massachusetts, the Court need not evaluate the remaining two jurisdictional factors.[5]  See, e.g., Adams v. Adams, 601 F.3d 1, 8 (1st Cir. 2010).  Without personal jurisdiction over the Defendants, the Court cannot enter a preliminary injunction.  See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1084 (1st Cir. 1992) (explaining that the "absence of jurisdictional authority would render [a preliminary injunction] void"); see also Covidien LP v. Esch, 229 F. Supp. 3d 94, 97 (D. Mass. 2017) (explaining that the court "must have personal jurisdiction over the defendant in order to enter the requested

---

[5] Plaintiff also argues in its opposition that Groma GPS-Turkey is subject to this Court's jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  [Dkt. 38 at 20].  Plaintiff did not plead this basis for jurisdiction in its complaint.  [See Compl. at ¶ 4].  For Rule 4(k)(2) to apply, the "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process."  Plixer Int'l v. Scrutinizer GmbH, 905 F.3d 1, 6 (1st Cir. 2018) (citing United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999)).  Plaintiff makes the conclusory statement that "[c]laims against Groma GPS-Turkey meet all of these factors" [Dkt. 38 at 20], but it remains the plaintiff's burden "to proffer evidence 'sufficient to support findings of all facts essential to personal jurisdiction' without relying on unsupported allegations."  Plixer, 905 F.3d at 6 (citation omitted).  Plaintiff has failed to provide such evidence with respect to the second and third factors, and the Court cannot exercise jurisdiction over Groma GPS-Turkey under Rule 4(k)(2).  See Swiss Am. Bank, 191 F.3d at 41-42 (explaining that the plaintiff "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state," and only then does the burden shift to the defendant to provide "evidence indicating that it is subject to jurisdiction in a particular state").

injunction," as personal jurisdiction is a "threshold matter").  For the foregoing reasons,

Defendants' joint motion to dismiss [Dkt. 25]  is **GRANTED**, and Plaintiff's motion for a

preliminary injunction [Dkt. 13] is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: April 3, 2023                                        /s/ Angel Kelley
                                                           Hon. Angel Kelley
                                                           United States District Judge